## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, John Blake, having been duly sworn, do hereby depose and state as follows:

### INTRODUCTION

1.  I am a Senior Special Agent with the Department of Homeland Security (DHS), National Protection & Programs Directorate (NPPD), Federal Protective Service (FPS), currently assigned to the Criminal Intelligence and Investigations Division. I have been assigned to the Criminal Intelligence and Investigations Division since 2000, during which time I have been involved in the investigation of more than seventy-five criminal cases. Prior to that assignment I was a FPS Police Officer from 1987 to 2000. I was also a Department of Defense Police Officer from 1986 to 1987. I have been a law enforcement officer for more than 20 years.

2.  I am aware, based on my training and experience, that it is a violation of 18 U.S.C § 115(a)(1)(B) to threaten to assault a United States official with intent to impede, intimidate, and interfere with such official while engaged in the performance of official duties, and with intent to retaliate against such official on account of the performance of official duties.

3.  The information set forth in this affidavit is based upon my own investigation. This affidavit is not intended to set forth all of the information that I have learned during this investigation, but only facts I believe are sufficient to establish probable cause in support of the issuance of a criminal complaint and an arrest warrant, charging Joseph John LAVITA (date of birth xx/xx/1963 and SS# xxx-xx-7743) with violating 18 USC § 115(a)(1)(B).

## FACTS

4.     Diane Shabowich is a Technical Expert with the Social Security Administration ("SSA").[1] She works in SSA's District Office in Lynn, Massachusetts. Among her duties is the responsibility to conduct reviews of the continuing eligibility of beneficiaries to receive benefits from the SSA.

5.     One of the beneficiaries to which Shabowich was assigned was LAVITA, who had been receiving Supplemental Security Income Disability Program ("SSI") benefits from SSA. In June 2011, Shabowich began conducting a review of LAVITA's continuing eligibility to receive SSI benefits. As a result of that review, SSA determined, among other things, that he was gainfully employed and terminated LAVITA's benefits. SSA also determined that LAVITA owed SSA thousands of dollars in overpayments that SSA had made to him since August 2010.

6.     After SSA informed LAVITA about the termination of his benefits, LAVITA began leaving what Shabowich described as "aggressive" voicemail messages for her.

7.     Then, on September 23, 2011, LAVITA left two voicemail messages for Shabowich on her office phone. In those messages, which I later recorded and listened to, LAVITA generally complains to Shabowich about his benefits being garnished, owing money to SSA, and the termination of his benefits. LAVITA also complains about

---

[1] Ms. Shabowich is a covered victim under 18 U.S.C. § 115(a)(1)(B) because 18 U.S.C. § 1114, the section cross-referenced therein, covers "any officer or employee of the United States or of any agency in any branch of the United States Government . . . while such officer or employee is engaged in or on account of the performance of official duties . . . ."

Shabowich – personally – causing those things to happen, and he alludes to committing suicide. LAVITA also threatens Shabowich.

8. Specifically, in the first message, LAVITA makes the following statements, among others:

- "I don't know how you folks expect me to live."
- "I know what this is coming down to and it's not going to be good for anybody."
- "If something does not happen in three weeks, my destiny for this world is going to be very short and I don't go alone."

9. In the second message, LAVITA makes the following statements, among others:

- "You'll know that social security screwed me and I took my life because of you people. Ok? And I want you to know that."
- "You caused this problem. As far as I'm concerned you're at fault in this matter, ma'am."
- "I'm a man on the edge."

10. Shabowich said that, after hearing these messages, she was shaken up and in fear for her personal safety.

11. On September 29, 2011, I delivered a "cease and desist" letter to LAVITA's home, in which he lives with his mother. LAVITA was not home, but I asked his mother to have LAVITA call me, and he did so later that evening. Among other things, I told him that an SSA-OIG agent would be visiting him to deliver an official letter banning him from visiting any SSA offices. LAVITA responded that federal agents

"better not come to his house" or he would "knock them out." He also said he would "defend" his property with "weapons" that he had. LAVITA also said he hoped he would be at work if agents came to his house so that he would not be "provoked."

12. A National Crime Information Center (NCIC) check of LAVITA completed on 9/23/2011 found him to have an extensive criminal history, including – among others – multiple prior convictions for assault and battery on a police officer and a prior conviction for making a threat.

## CONCLUSION

13. Based on the foregoing, I have probable cause to believe that Joseph John LAVITA violated 18 USC § 115(a)(1)(B).

_____
John Blake
Senior Special Agent
Department of Homeland Security
National Protection & Programs
Directorate
Federal Protective Service

Date: 10/13/2011

Subscribed and sworn to before me this 13th day of October, 2011.

_____
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE